Leah S. Freed, Bar #021332
*Leah.Freed@ogletreedeakins.com*
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2415 East Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone: (602) 778-3700

Randall E. Kahnke, Minn. #202745
*randall.kahnke@FaegreBD.com*
Martin S. Chester, Minn. #31514X
*martin.chester@FaegreBD.com*
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone:  (612) 766-7000

*Pro hac vice applications forthcoming*

Attorneys for Plaintiff Honeywell International Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

**Honeywell International Inc.,**

    **Plaintiff,**

 v.

**Robert Jeremy Miller,**

    **Defendant.**

## COMPLAINT
### Jury Trial Demanded

Plaintiff Honeywell International Inc. ("Honeywell") for its Complaint against Robert Jeremy Miller ("Miller") alleges as follows:

## INTRODUCTION

1. Honeywell brings this case to stop the theft of its trade secrets, proprietary and confidential information (the "Trade Secrets"), and to protect the relationships that it has spent years and substantial resources developing.

2. Defendant Robert Jeremy Miller is a former Honeywell employee. While employed at Honeywell, Miller had access to the Trade Secrets, including but not limited to highly confidential Honeywell customer, pricing, and strategy information for the business line in which he worked. On information and belief, Miller accepted an offer of employment with Blue Sky Network, a competitor of Honeywell.

3. Miller has stolen Honeywell's valuable Trade Secrets. Specifically, Miller copied and kept an entire database containing information regarding approximately 3,000 Honeywell customers. After copying and keeping this data, Miller erased the database and took steps to prevent Honeywell from restoring the information. Miller also copied significant amounts of Honeywell's pricing and other valuable information from his Honeywell-provided laptop, and then erased the data and took steps to impair Honeywell's ability to forensically analyze what Miller did with the computer and the information.

4. On information and belief, Miller told Blue Sky Network that he will use contacts (which he had, in fact, stolen from Honeywell) to build business for Blue Sky Network.

5. Honeywell will suffer irreparable harm if Miller is not promptly enjoined from using or disclosing Honeywell's Trade Secrets and from soliciting Honeywell customers in violation of his contractual duties to Honeywell. Miller must also be ordered to return all of the Trade Secrets and any other Honeywell property that he has stolen.

## PARTIES

6. Honeywell is a Delaware corporation with its principal place of business in Morris Plains, New Jersey. Honeywell is well-known for its long history of contributions to the aviation industry. The division of Honeywell that oversees the development, implementation, and sales of aviation technology in the United States is headquartered in Phoenix, Arizona.

7. On information and belief, Miller is a resident of Phoenix, Arizona. Until February 21, 2017, Miller was an employee of Honeywell. At the time of his termination, Miller was a Specialist in Senior Project Management for Customer and Product Services.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1332, because the action is between citizens of different states and the amount in controversy exceeds $75,000. The Court also has jurisdiction over the subject matter of this action because Honeywell's allegations arise under 18 U.S.C. § 1836(b), which provides for a right of civil action for theft of trade secrets.

9. This Court has personal jurisdiction over Miller because Miller is a resident of Phoenix, Arizona and because Miller regularly transacted business in Arizona and was employed in Arizona during the relevant time.

10. Venue is proper in the District of Arizona, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in Phoenix, Arizona, and the property that is the subject of the action is situated in Phoenix.

## BACKGROUND

**Honeywell's Flight Support Services Business**

11. Honeywell is a global leader in aviation technology and sales. Miller worked for Honeywell in the area of flight support services on Honeywell's Sky Connect business, which includes satellite communications that provide services to aircraft, such as text and voice communication, global positioning system tracking, and other report data.

12. The field of flight support services is competitive and growing. Because of the importance of safety and reliability in the aviation industry, customers expect constant, clear, and accurate communication among their aircraft. Customers also demand that their products are reliable and that they integrate smoothly with their control centers and data management. When updates or other outages are planned, customers need to have their data managed so that their records, fleet controls, and safety standards are not compromised. When customers have questions or issues, they must be resolved immediately.

13. Honeywell's technology support has been critical to its success and has provided a competitive advantage in this field.

**Miller's Employment with Honeywell**

14. Miller became a Honeywell employee in August 2013 when his former employer, EMS Technologies, was acquired by Honeywell. Miller worked as a Specialist in Senior Project Management for Customer and Product Services. In this position, Miller was the direct support contact for Sky Connect customers. Miller frequently worked with customers to answer questions and troubleshoot problems.

15. In his role, Miller was provided with Honeywell Trade Secrets, including information regarding Honeywell's products, customers, pricing strategies, business tactics, and

strategy. As part of his role, Miller also managed a 3,000-customer database that was a compilation of contact information for Honeywell's Sky Connect customers, and which Honeywell uses to communicate important information to its customers.

16. The Honeywell Trade Secrets to which Miller had access are very valuable to Honeywell, and would provide an unfair competitive advantage to any Honeywell competitor that obtained access to the Trade Secrets.

**Miller's Contractual Obligations to Honeywell**

17. In 2013, Miller signed an Employee Agreement Relating to Trade Secrets, Proprietary and Confidential Information (the "IP Agreement"). In the IP Agreement, Miller agreed to protect the confidentiality of Honeywell's Trade Secrets, and he agreed not to solicit or attempt to solicit Honeywell customers, employees, and other specified parties for a period of two years following his resignation. A true and correct copy of the IP Agreement is Exhibit A to this Complaint.

18. The IP Agreement provides that Miller was signing the agreement in "consideration of my employment, continued employment, compensation, and the equipment, materials, facilities and Honeywell's 'Trade Secrets, Proprietary and Confidential Information' . . . supplied to me." Section 20(b) of the IP Agreement defines "'Trade Secrets, Proprietary and Confidential Information" as:

> [I]information which is not generally known in the industry in which
> Honeywell is engaged, which may be disclosed to [Miller] or which [Miller]
> may learn, observe, discovery or otherwise acquire during, or as a result of
> [his] employment by Honeywell and which includes, without limitation, any
> information . . . relating to existing or contemplated products . . . , services,
> technology . . . , compilations of information . . . , methods, techniques . . . ,
> business plans, sales or market methods, methods of doing business,
> customer lists, customer usages or requirements, or supplier information,
> which is owned or licensed by Honeywell or held by Honeywell in
> confidence.

19. Under the IP Agreement, Miller made a number of promises regarding Honeywell's Trade Secrets. Among other things, he promised that:

> I will never, directly or indirectly, use Honeywell's Trade Secrets, Proprietary and Confidential Information except in furthering Honeywell's business nor will I disclose or disseminate Honeywell's Trade Secrets, Proprietary and Confidential Information to anyone who is not an officer, director, employee, attorney or authorized agent of Honeywell without prior written consent
> . . .
> I understand that I have the right to use or practice any skill or expertise generally associated with my employment but not special or unique to Honeywell, but that I do not have the right to use, practice or disclose Honeywell's Trade Secrets, Proprietary and Confidential Information for my own benefit or for the benefit of any third party.
> . . .
> All documents and tangible things embodying or containing Honeywell's Trade Secrets, Proprietary and Confidential Information are Honeywell's exclusive property. I have access to them solely for performing the duties of my employment by Honeywell. I will protect the confidentiality of their content and comply with all security policies and procedures, which may, from time to time, be established by Honeywell. I will return all of them and all copies, facsimiles and specimens of them and any other tangible forms of Honeywell's Trade Secrets, Proprietary and Confidential Information in my possession, custody or control to Honeywell before leaving the employment of Honeywell.

(Exhibit A § 6.)

20. In Section 10 of the IP Agreement, Miller promised not to solicit Honeywell customers for a two-year period following his resignation, agreeing that for two years after his termination of employment from Honeywell for any reason:

> I will not directly or indirectly, for my own account or for others, solicit or assist others in soliciting or attempt to solicit (or assist others in attempting to solicit), (i) any existing clients, customers, suppliers, business partners, and/or vendors of Honeywell with whom I had contact, or of whom I became aware while employed by Honeywell during the two-year period prior to my Termination of Employment, or (ii) any prospective clients, customers suppliers, business partners, and/or vendors of Honeywell with whom I had contact and with whom Honeywell took significant steps to do business during the two-year period prior to my termination, for the purpose of inducing such existing or prospective clients, customers, suppliers, business

partners, and/or vendors to cease doing business or to reduce their business with Honeywell or to purchase, lease or utilize products or services which are competitive with, similar to, or that may be used as substitutes for any products or services offered by Honeywell.

21. Miller also agreed, in Section 6 of the IP Agreement, that for two years after leaving Honeywell, he would not engage "in any activity or employment in the faithful performance of which it could be reasonably anticipated that [he] would use or disclose Honeywell's Trade Secrets, Proprietary and Confidential Information," unless he first received written consent from Honeywell.

**Honeywell Protects its Trade Secrets**

22. In addition to requiring its employees to sign confidentiality agreements like Miller's IP Agreement, Honeywell takes several additional measures to protect the confidentiality of its Trade Secrets. For example, Honeywell maintains tight security of its headquarters and offices. Honeywell also maintains security around its electronic data and computer network. Employees are granted access to Trade Secrets on a need-to-know basis.

23. As it did with Miller, Honeywell reminds all departing employees of their obligations to maintain the confidentiality of Honeywell's Trade Secrets.

**Miller Breached His Contractual Duties to Honeywell and Stole Honeywell's Trade Secrets**

24. On or about February 21, 2017, Miller's employment with Honeywell terminated. At or around this time, Miller stole Honeywell's Trade Secrets in multiple ways.

25. First, on or about February 21, 2017, Miller stole the Honeywell customer contact database, which he was responsible for managing and which was housed with a third-party vendor. Miller accessed this account and copied all of the contents—containing approximately 3,000 customer contacts—onto a personal device. Miller then erased all of the data, and changed the access information so that Honeywell could not obtain access to or restore

7

the data.  As of the date of this Complaint, Honeywell cannot access this database, and the third-party vendor will not restore Honeywell's access to its database and restore the data without a Court order or without agreement by the parties.

26. On information and belief, Miller possesses these 3,000 Honeywell contacts.

27. Second, Miller has retained records containing information about Honeywell customer preferences, needs, and service inquiries.  These records are kept on a set of index cards that Miller maintained in the course of his duties as a Honeywell employee.  Miller did not return this information to Honeywell upon termination of his employment even though the IP Agreement requires him to do so.

28. Third, Miller stole data directly from his Honeywell laptop.  On or about February 21, 2017, Miller—rather than immediately return his Honeywell-provided laptop to Honeywell after his employment ended—copied information related to Sky Connect and put it on at least two external hard drives.  Miller then deleted all of the user data from his Honeywell laptop—including data that was Honeywell property—and he ran the "defragment" utility on the laptop.  Running this utility makes it more difficult to recover forensic data about activity on the computer.  In other words, Miller attempted to delete, and did delete, Honeywell information stored on his Honeywell computer.

29. On information and belief, Miller still possesses Honeywell's Trade Secrets, including but not limited to the 3000-name customer database, the electronic data taken from his Honeywell laptop, and the index cards containing customer preference and interaction records.

30. On March 4, 2017, Honeywell's counsel sent a letter to Miller demanding that Miller confirm in writing that he has ceased any violations of his obligations to Honeywell, and that he has preserved for return to Honeywell any Honeywell property.  Honeywell's counsel

stated that if counsel did not receive such certification from Miller by the close of business on Tuesday, March 07, 2017, Honeywell would presume that Miller refuses to assure Honeywell that its Trade Secrets are being protected.  Miller did not respond or provide any such certification.

31. Honeywell will suffer irreparable harm if Miller is not enjoined from using or disclosing the Trade Secrets, and if he is not forced to return the Trade Secrets to Honeywell, and if Honeywell does not obtain restored access to its customer database.

## Count One
### (Breach of Contract)

32. Honeywell incorporates the foregoing paragraphs as if fully stated herein.

33. The IP Agreement prohibits Miller, for two years after leaving Honeywell, from soliciting Honeywell customers with whom Miller had contact or of whom he became aware during his time at Honeywell.

34. In addition, the IP Agreement requires Miller to return all of Honeywell's Trade Secrets—including customer contact information—to Honeywell upon termination of his employment.  The IP Agreement also prohibits Miller from disclosing or using Honeywell's Trade Secrets for his benefit or the benefit of anyone other than Honeywell.

35. Furthermore, the IP Agreement prohibits Miller from engaging in any activity or employment in which it could be reasonably anticipated that Miller would use or disclose Honeywell's Trade Secrets, without first receiving permission from Honeywell.

36. Miller has breached the IP Agreement by taking Honeywell's Trade Secrets and by retaining that information after termination of his employment with Honeywell.

37. Honeywell will suffer damages as a result of Miller's breach in an amount to be determined at trial, and Honeywell will also suffer irreparable harm absent injunctive relief.

**Count Two**
**(Misappropriation of Trade Secrets in Violation of**
**Arizona Uniform Trade Secrets Act, A.R.S. § 44-401 *et seq*.)**

38. Honeywell incorporates the foregoing paragraphs as if fully stated herein.

39. Through his employment by Honeywell, Miller had access to and acquired Trade Secrets belonging to Honeywell under circumstances including, but not limited to, those described above, giving rise to a duty to Honeywell to maintain the secrecy of this information and limit its use for the benefit of only Honeywell.

40. Miller was subject to a duty of confidentiality.

41. The Trade Secrets have independent economic value because they are not generally known to or readily ascertainable by proper means by persons outside of Honeywell.

42. Honeywell intended to keep its Trade Secrets confidential and has made reasonable efforts under the circumstances to maintain the secrecy of the information.

43. As discussed above, Miller has misappropriated Honeywell's Trade Secrets.

44. Miller's misappropriation of Honeywell's Trade Secrets was willful and malicious.

45. Honeywell will suffer irreparable harm as a result of Miller's wrongful conduct.

46. Honeywell will suffer damages as a result of Miller's breach in an amount to be determined at trial, and Honeywell will also suffer irreparable harm absent injunctive relief.

## Count Three
### (Violation of the Defend Trade Secrets Act, 18 U.S.C. 1836(b))

47. Honeywell incorporates the foregoing paragraphs as if fully stated herein.

48. Miller misappropriated Honeywell's Trade Secrets in that he knowingly acquired the Trade Secrets by improper means.

49. Miller also misappropriated Honeywell's Trade Secrets in that he acquired the Trade Secrets under circumstances giving rise to Miller's duty to maintain the secrecy of such information or limit the use of such information.  Miller has used and/or disclosed Honeywell's Trade Secrets without Honeywell's express or implied consent.

50. Honeywell's Trade Secrets are related to a product or service used in, or intended for use in, interstate or foreign commerce.

51. Honeywell has taken reasonable steps to maintain the confidential nature of its Trade Secrets, including but not limited to the information that Miller stole.

52. Miller possesses Honeywell's Trade Secrets without any color of right.

53. Miller's actions in misappropriating Honeywell's Trade Secrets were done willfully and maliciously.

54. As a direct result of Miller's actions, he has violated the Defend Trade Secrets Act of 2016, 18 U.S.C. 1832, *et. seq.*

55. Honeywell will suffer damages as a result of Miller's breach in an amount to be determined at trial, and Honeywell will also suffer irreparable harm absent injunctive relief, and Honeywell is entitled to an injunction to prevent Miller's misappropriation and threatened further misappropriation.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

1. Issue temporary and permanent injunctions enjoining Miller from taking any actions that would violate his obligations to Honeywell under the IP Agreement;

2. Enjoin Miller from using or disclosing any of Honeywell's Trade Secrets;

3. Order Miller to take the following affirmative actions to protect Honeywell's Trade Secrets:

    a. Return to Honeywell all Honeywell property, documents, and other materials belonging to Honeywell or any of its subsidiaries, including but not limited to Honeywell's Trade Secrets;

    b. Notify Constant Contact, the third-party vendor that housed Honeywell's customer database, that control of the database should be returned to Honeywell;

4. Enter judgment against Defendant Miller and in favor of Plaintiff Honeywell for:

    a. All damages proximately caused by Miller's wrongful actions;

    b. Damages for any unjust enrichment caused by the misappropriation of the Trade Secrets that is not addressed in computing damages for actual losses by Honeywell;

    c. Exemplary damages in an amount two (2) times the amount of the combined actual and unjust enrichment damages; and

    d. All interest, reasonable attorneys' fees, and costs available under the law.

5. Order such other relief and damages as the Court may deem just and proper.

Dated: March 8, 2017	OGLETREE, DEAKINS, NASH,
	SMOAK & STEWART & P.C.


	By: s/Leah S. Freed
	      Leah S. Freed
	      2415 East Camelback Road, Suite 800
	      Phoenix, Arizona 85016

	FAEGRE BAKER DANIELS LLP
	Randall E. Kahnke
	Martin S. Chester
	2200 Wells Fargo Center
	90 South Seventh Street
	Minneapolis, MN  55402-3901
	Telephone:  (612) 766-7000

	Attorneys for Plaintiff Honeywell
	International Inc.

29009244.1